**The CLARKSON COMPANY LIMITED, as Receiver for Rapid Data Systems & Equipment Ltd., and Rapid Data Systems & Equipment Ltd., Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant.**

**ROCKWELL INTERNATIONAL CORPORATION, Counterclaimant,**

v.

**The CLARKSON COMPANY LIMITED, as Receiver for Rapid Data Systems & Equipment Ltd., and Rapid Data Systems & Equipment Ltd., Counterdefendants.**

**No. C–76–2342–CBR.**

United States District Court, N. D. California.

Dec. 6, 1977.

Graham & James, Paul A. Dezurick, Bonnie L. Stack, San Francisco, Cal., for plaintiffs.

Orrick, Herrington, Rowley & Sutcliffe, Richard J. Lucas, Jack B. Owens, Daniel P. Cunningham, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Defendant Rockwell International Corporation ("Rockwell") has moved for summary judgment in plaintiffs' antitrust and breach of contract action on the ground that neither plaintiff has capacity to sue pursuant to Rule 17(b), Fed.R.Civ.P., and that neither is the real party in interest pursuant to Rule 17(a), Fed.R.Civ.P. Argument on the motion was heard July 28, 1977. By letter of September 16, 1977, the Court asked plaintiff The Clarkson Company Limited ("Clarkson") to submit letters of ratification from those parties claimed to be the real parties in interest, and such letters were filed October 13, 1977. After careful consideration of the exhaustive briefing and arguments of counsel on this motion, the Court concludes that it must be denied.

The facts pertinent to the motion are as follows. Plaintiffs' claims arise out of the performance of contracts between Rockwell and Rapid Data Corporation ("Rapid Data"), a Canadian corporation, pursuant to which Rockwell was to supply components for the manufacture of handheld calculators, as well as finished calculators for sale by Rapid Data. During 1973, Rapid Data encountered serious financial difficulties, allegedly in part because of Rockwell's actions. In an effort to cope with these difficulties, Rapid Data negotiated increased financing from the Bank of Montreal and the First National City Bank of New York. By means of a $10,000,000 debenture with the Bank of Montreal signed September 18, 1973, and a pledge agreement with the same bank signed October 24, 1973, Rapid Data created a floating charge on all of its property and assets as security for the indebtedness to both banks, and granted the Bank of Montreal the right to appoint a receiver to manage the affairs of Rapid Data in the event of a default. At the same time, the Bank of Montreal obtained assignments of "all debts, claims, demands, and choses in action" vested in Rapid Data, again as security for the debt owed both banks.

On January 31, 1974, an unsecured creditor of Rapid Data filed a bankruptcy petition in a Canadian court, and Clarkson was appointed interim receiver in bankruptcy by that court. On February 25, 1974, the Bank of Montreal appointed Clarkson as its agent to collect Rapid Data's accounts receivable and on March 1, 1974, it appointed Clarkson private receiver and manager under the debenture on behalf of both banks. By letter of March 26, 1974, Clarkson, as interim bankruptcy receiver, informed all Rapid Data creditors that refinancing efforts had failed, that there was no possibility of any recovery to unsecured creditors in bankruptcy, and that in its opinion the bankruptcy proceeding should be terminated because the expense was not warranted in light of the impossibility of recovery. On April 17, 1974, Clarkson filed an affidavit with the Canadian bankruptcy registrar detailing Clarkson's activities as interim receiver, stating that there would be a shortfall even to secured creditors, and asking to be terminated as interim receiver because of its appointment as private receiver. The petitioning creditor applied to withdraw his petition, and on April 17, 1974, the bankruptcy registrar granted leave to withdraw, dissolved the order appointing Clarkson, and discharged it as interim receiver. The petition was withdrawn on April 25, 1974.

Rapid Data's assets were sold off during 1974, but Rapid Data's corporate charter has not been cancelled. On October 20, 1976, Rapid Data and Clarkson filed this action, seeking damages, after trebling, in the range of $80,000,000, or approximately 20 times the amount still owing under the debenture.

■ Defendant's first contention is that neither plaintiff has capacity to sue. With respect to Rapid Data, it argues that the appointment of Clarkson as private receiver with full authority to run the business as well as plenary power over the mortgaged property—that is, all of Rapid Data's assets—deprived Rapid Data of capacity to sue under the applicable Canadian law. But defendant has failed to cite a single authority directly supporting this proposition. There is no question that, as a general matter, the debtor's power to deal with the property and carry on its business are paralyzed upon the appointment of a receiver. *E. g., Moss Steamship Co. Limited v. Whinney,* [1912] A.C. 254 (House of Lords); *Parsons v. Sovereign Bank of Canada,* [1913] A.C. 160 (Privy Council). More specifically, defendant has cited two cases holding that the debtor has no right to sue in its own name after court appointment of an interim receiver in bankruptcy. *Chow v. Patterson,* 38 D.L.R.3d 721 (B.C.Sup.Ct. 1973); *Dubnitsky v. Sun Life Assurance Co.,* 22 C.B.R. 431 (Montreal Super.Ct.1940). But a subsequent case suggests that those cases are no longer good law because of a change in the Bankruptcy Act, and holds that a debtor is not precluded from instituting proceedings in its own name by the appointment of a receiver and manager. *Del Zotto v. International Chemalloy Corporation,* 22 C.B.R. 268, 270, 277 (Ont.Sup.Ct. 1976).

Other authorities suggest that Rapid Data is not only a proper but may even be a necessary party, because it is entitled to any recovery in excess of the amount owed to the banks. *Re Wimco Steel Sales Company Limited,* 13 C.B.R. 80 (N.S.1969) (and comment thereto). The most appropriate entity for dealing with the surplus may well be a bankruptcy trustee, and such a trustee was present in *Re Wimco, supra.* But when no bankruptcy petition has been filed and no trustee appointed, the only party available to represent the interest in the surplus is the debtor itself.

■ Finally, despite the terms of a Canadian statute which suggest that Rapid Data's charter could be forfeited for failure to use its corporate powers for three consecutive years, Canada Corporations Act § 31(1), the Ministry of Consumer and Corporate Affairs has certified that Rapid Data's charter was in force as of June 9, 1977. On this record, the Court cannot find that the certificate is contrary to the statute or that the statute, if contrary, should prevail over a clear administrative determination.

In sum, since Rapid Data is the only entity with any presently assertable interest in a surplus recovery, and since its right to sue has not been terminated by either the appointment of a receiver or the terms of the Corporations Act, it has capacity to bring this suit.

■ The literal language of Rule 17(b)[1] appears to dictate the application of Canadian law to the question of Clarkson's capacity as well. However, the rule has generally been construed to eliminate the distinction between individuals acting in a representative capacity and corporations so

1. Rule 17(b) provides:
 "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partner-

ship or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C. §§ 754 and 959(a)."

acting, with the result that the question of the capacity of any entity acting as a representative is governed by the law of the state in which the court presides. See C. Wright & A. Miller, Federal Practice and Procedure § 1561, at 735–736 (1971); 3A Moore's Federal Practice ¶ 17.22 (1977).

 Defendant challenges Clarkson's capacity to sue on two grounds. First, it argues that Clarkson never acquired the right to sue, even in Canada, because Rapid Data had assigned all its claims to the banks prior to Clarkson's appointment as receiver. Yet defendant concedes that Clarkson could sue in Canadian courts on any claim formerly held by Rapid Data (Defendant's Opening Brief, filed June 23, 1977, at 24), and it is clear that a partial assignment for collateral security like that involved here could not deprive the assignor of the right to sue. See Re Wimco Steel Sales Company Limited, supra, 13 C.B.R. 80. More fundamentally, although the Court has been directed to no Canadian authority directly on point, it is inconceivable that the assignment of a claim as security for a debt could deprive the secured party of the right, recognized by Canadian law, to pursue the claim through a privately appointed receiver. Thus, whether Clarkson is viewed as the representative of Rapid Data or of the banks, there has been no showing whatsoever that the assignment deprived it of capacity under Canadian law.

 The more difficult question raised by defendant is whether a foreign private receiver's right to sue under the laws of its domicile would be recognized by California courts. The private receiver is a legal status unknown in the United States, and research has disclosed no authority from any United States court dealing with such an entity. However, receivers appointed by foreign courts are generally permitted to sue in California as a matter of comity, provided the rights of local creditors are not prejudiced thereby and there is no conflict with the public policy of California. E. g., Smith v. Shepler, 8 Cal.App.2d 717, 720–721, 48 P.2d 999, 1002 (3d Dist. 1935); see Lewis v. Clark, 129 F. 570, 573 (9 Cir. 1904). Al-

though Clarkson, as private receiver, was appointed by private parties pursuant to contract, it nevertheless asserts a status created by the laws of a foreign jurisdiction. The Court concludes that the recognition of such entities for purposes of suit in California courts must also be a matter of comity.

The only local creditors known to the Court are Rockwell itself and Electronic Arrays, Inc., which is the defendant in another suit filed by Clarkson and Rapid Data in this District. The interest of local creditors who are defendants in the very actions calculated to create a fund for distribution to creditors is not the type of interest with which California courts denying capacity have been concerned. See Lackmann v. Supreme Council O. C. F., 142 Cal. 22, 75 P. 583 (1904); Ward v. Pacific Mutual Life Ins. Co., 135 Cal. 235, 67 P. 124 (1901). The only possible prejudice to such creditors arises from the absence of a bankruptcy proceeding to govern the distribution of any excess recovery. Since they are obviously aware of Clarkson's claims, the remedy for such prejudice is at their disposal. Either could initiate a bankruptcy proceeding simply by filing a petition with a Canadian court.

As to domestic policy, defendant argues that in the absence of a bankruptcy proceeding there is no one to represent the interests of creditors or to supervise distribution of any surplus recovery, and that Clarkson's role in the termination of bankruptcy proceedings involved some sort of improper scheme which should not be furthered by this Court. Yet the accusations of improper behavior by Clarkson are wholly speculative; there is no evidence that Clarkson has in any way violated its obligations to any creditor under Canadian law, or that the Canadian court was in any way dissatisfied with Clarkson's performance. See Affidavit of David I. Richardson, Exhibit 4 to Plaintiffs' Memorandum filed July 18, 1977, ¶ 9.

 Defendant's only real policy objection is that some creditors—to the Court's knowledge exclusively Canadians—may be

prejudiced by the use of a method for dealing with insolvency which, though fully acceptable in Canada, may afford somewhat less protection for their interests than would be available pursuant to insolvency proceedings conducted in the United States. Such variances in the law do not justify a refusal to countenance an action on grounds of public policy unless enforcement of the foreign right would be prejudicial to recognized standards of morality or to the general interests of California citizens. *Biewend v. Biewend,* 17 Cal.2d 108, 113–114, 109 P.2d 701 (1941). Here, no effect on California citizens, except as discussed above, has been alleged. Nor are the Canadian procedures offensive to any abstract standard of morality or justice. Although not a fiduciary, Clarkson has an obligation to conduct the litigation in good faith and to take reasonable steps to obtain the best recovery possible. *Ostrander v. Niagara Helicopters Limited,* 1 O.R.(2d) 281, 286 (1973). Moreover, a Clarkson Vice President has stated under oath that Clarkson will apply to a Canadian court for direction as to the proper disposition of any surplus recovery. Affidavit of David I. Richardson, *supra,* ¶ 7. Under these circumstances, the differences between United States and Canadian law are hardly sufficient to warrant a dismissal on any ground of public policy.

■ For the reasons stated above, the Court finds that Clarkson, as well as Rapid Data, has capacity to bring this action. Defendant's assertion that the absentee banks are the real parties in interest is more troubling. Resolution of that question would require an inquiry into the real ownership of the claims under the applicable substantive law. *United States v. 936.71 Acres of Land, State of Fla.,* 418 F.2d 551, 556 (5 Cir. 1969); *see Spoo v. Boothe,* 453 F.2d 405 (9 Cir. 1971). Rather than engage in a metaphysical analysis of "ownership" under the

intricate foreign arrangements which presently govern the allocation of interests in these claims, the Court has sought and received letters of ratification from each bank, which permit the action to proceed as if it had been commenced in their names pursuant to Rule 17(a),[2] and moot any question as to who is in fact the real party in interest. *Honey v. George Hyman Construction Co.,* 63 F.R.D. 443, 447–448 (D.D. C.1974); *Southern Nat. Bank of Houston, Tex. v. Tri Financial Corp.,* 317 F.Supp. 1173, 1187 (S.D.Texas 1970). By consenting to the conduct of the suit by Clarkson on their behalf, agreeing to be bound by the outcome, and further agreeing to be bound by the Federal Rules of Civil Procedure for purposes of discovery in the action, the banks have more than satisfied the modern function of Rule 17(a), "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Notes of Advisory Committee on Rules, Fed.R.Civ.P. 17(a), 1966 Amendment. Indeed, they have eliminated every item of prejudice flowing from their absence complained of by Rockwell.

■ Ratification, though rare, is an entirely proper method of resolving controversies over real parties in interest. *See Urrutia Aviation Enterprises, Inc. v. B. B. Burson & Assoc., Inc.,* 406 F.2d 769 (5 Cir. 1969); *Honey v. George Hyman Construction Co., supra,* 63 F.R.D. at 447–448; *Pace v. General Electric Company,* 55 F.R.D. 215, 219 (W.D.Pa.1972); *Southern Nat. Bank of Houston, Tex. v. Tri Financial Corp., supra,* 317 F.Supp. at 1187–1188; C. Wright & A. Miller, Federal Practice and Procedure § 1555, at 709 (1971). As defendant has pointed out, this portion of the rule is not intended to validate claims filed with no real basis in the hope that a proper party

---

**2.** Rule 17(a) provides in relevant part:

"Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

will eventually materialize, but merely "to prevent forfeiture when determination of the proper party is difficult or when an understandable mistake has been made." Notes of Advisory Committee on Rules, *supra.* In light of the complexity of the transaction involved, the apparent propriety of the suit under Canadian law, the absence of authority on the point in the United States, and the good faith response of the banks to Rockwell's complaints of prejudice, the Court concludes that this case falls well within the latter category.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment is denied.