**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**MAIN HURDMAN, Defendant and Third-Party Plaintiff,**

v.

**HOLT LEASING COMPANY, et al., Third-Party Defendants, Counterclaimants, and Fourth-Party Plaintiffs,**

v.

**KMG MAIN HURDMAN, et al., Counterdefendants,**

and

**Continental Illinois National Bank and Trust Company of Chicago, Fourth-Party Defendants.**

No. CIV S–85–552 LKK.

United States District Court, E.D. California.

March 3, 1987.

William Alsup, Patrick J. Flinn, Laurie S.
Hane, Morrison & Foerster, San Francisco,

Cal., Theodore H. Livingston, Robert J. Kriss, Barbara Bertok, Lynne M. Raimondo, George A. Martinez, Mayer, Brown & Platt, Chicago, Ill., for Federal Deposit Ins. Corp.

Thomas G. Redmon, Matthew W. Powell, Wilke, Fleury, Hoffelt, Gould & Birney, Sacramento, Cal., Robert J. Kheel, Michael R. Young, David Welch, Willkie, Farr & Gallagher, Richard I. Miller, Gen. Counsel, New York City, for defendant & third-party plaintiff KMG Main Hurdman.

William A. Wineberg, Robert H. Sloss, John E. Rumel, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for fourth-party defendants Continental Illinois Nat. Bank and Trust Co. of Chicago.

James A. Askew, Neumiller & Beardslee, Stockton, Cal., for Holt Leasing Co., Parker M. Holt, Harry D. Holt, Jarmir F. Marek, Victor C. Wykoff, Jr. and Ronald E. Monroe.

## ORDER

KARLTON, Chief Judge.

The Federal Deposit Insurance Corporation ("FDIC") has sued KMG Main Hurdman ("KMG") in three counts: fraud, negligent misrepresentation, and accountant malpractice. It premises the jurisdiction of this court on 12 U.S.C. § 1819[1], and seeks compensatory and punitive damages in the approximate sum of 140 Million Dollars.

In essence, the FDIC claims that KMG was the accounting firm for Holt Leasing Company and pursuant to that employment provided financial statements which it knew or should have known were to be used by Holt in obtaining credit. It further alleges that those financial statements were false, but were reasonably and detrimentally relied upon by Continental as a basis for the extension of credit to the Holt Companies.

The plaintiff alleges at paragraph 2 of the complaint that "[t]he FDIC brings this action in its capacity as assignee of all rights, interests and claims of Continental Illinois National Bank and Trust Company of Chicago ["Continental"] under, or in any way related to or arising in connection with, certain loans made by Continental to Holt Leasing Company ["Holt"] during 1981 and 1982."

In response, among other things, "[d]efendant denies the allegations of paragraph 2 of the complaint." In addition, defendant alleges two "affirmative defenses":

### SIXTH AFFIRMATIVE DEFENSE

The claims set forth in the complaint are not assignable, and by reason thereof plaintiff is not the real party in interest.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's permanent assistance program for Continental Bank was in excess of plaintiff's statutory authority. The purported assignment of the claim set forth in the complaint to plaintiff pursuant to said permanent assistance program was therefore invalid, and by reason thereof plaintiff is not the real party in interest.

This opinion disposes of plaintiff's motion to strike these two defenses. Both plaintiff and defendant treat the motion as raising essentially the same issue, whether defendant has "standing" to raise the defenses. As I explain below, I believe that the motion requires consideration of somewhat different issues as to each of the affirmative defenses.

I first examine the distinction between affirmative defenses and negative averments. I then turn to the standards applicable to a motion to strike. Finally, I examine the defenses in light of the substantive law and dispose of the motions. I determine herein that the sixth affirmative defense should be stricken because defend-

[1]. The statute provides, in pertinent part, "[a]ll suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States District Court shall have original jurisdiction thereof, without regard to the amount in controversy; ... except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights and obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States." 12 U.S.C. § 1819.

ant's contention concerning the assignable nature of the claim is surplusage and its assertion that plaintiff is not the real party in interest is without merit. As to the seventh affirmative defense, the court concludes that the contention is a true affirmative defense, but that defendant lacks standing to assert that plaintiff's conduct is ultra vires.

## I

## AFFIRMATIVE DEFENSES AND SPECIFIC NEGATIVE AVERMENTS

Federal Rule of Civil Procedure 8(c) requires the affirmative pleading of 19 separate defenses, and of "any matter constituting an avoidance or affirmative defense." Historically, the rule is derived from the common law practice of confession and avoidance, 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1270, at 289 (1969), and that derivation defines the function of the pleading. Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true. *Gomez v. Toledo*, 446 U.S. 635, 640–41, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). As a general matter then, the pleading of an affirmative defense puts the plaintiff on notice that matters extraneous to his prima facie case are in issue and ordinarily allocates the burden of proof on

the issue. *Kouba v. Allstate Ins. Co.*, 691 F.2d 873 (9th Cir.1982).[2] On the other hand, the Federal Rules also recognize a species of facts which, although raising matters concerning alleged deficiencies in the plaintiff's prima facie case, nevertheless must be pled by the defendant. Fed.R.Civ.P. 9(a).[3] *See* 5 Wright & Miller, *supra*, § 1294, at 393. As to such matters, plaintiff retains the burden of proof.

The matters at bar raise an instance of a true "affirmative defense" and an instance requiring specific negative averment. As I explain below, the sixth so-called "affirmative defense," because it deals with the capacity to sue, raises issues controlled by Fed.R.Civ.P. 9(a), whereas the seventh affirmative defense, because it alleges matters extraneous to the plaintiff's prima facie case, falls within the ambit of Fed.R.Civ.P. 8(c).

### A. *Assignability of Claims*

■ As noted above, plaintiff alleges that it sues in its capacity as assignee of Continental Bank. In addition to denying the allegation, the defendant in its sixth so-called "affirmative defense" alleges in effect that the claims sued on are tortious in character and nonassignable. By virtue thereof, defendant alleges that it is not being sued by the real party in interest, i.e., that the plaintiff has no capacity to sue it.[4] Since plaintiff to prevail must demon-

**2.** I use the term "burden of proof" in both of its traditional senses. *See United States v. Veon*, 538 F.Supp. 237, 245 n. 8 (E.D.Cal.1982). It has been suggested that notions of "fairness" and "policy" may, in addition, require pleadings in the form of affirmative defenses. *See* 5 Wright & Miller, *supra*, § 1271, at 313. If the commentators are correct, such considerations might result in matters being required to be pled as affirmative defenses which do not carry the burden of proof. It appears to the court as a matter of pleading theory that it is probably better to view such considerations as requiring a specific "negative averment" in order to avoid confusion as to who bears the burdens of proof. As I explain in text, the instant pleadings encompass issues requiring such specific negative averments under Fed.R.Civ.P. 9, and true affirmative defenses under Fed.R.Civ.P. 8(c).

**3.** The rule provides in pertinent part, "[i]t is not necessary to aver the capacity of a party to

sue.... When a party desires to raise an issue as to ... the capacity of any party ... or the authority of a party to sue ... he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Fed.R.Civ.P. 9(a).

**4.** Ordinarily, questions of capacity to sue arise in the context of a plaintiff who appears in a representative capacity, i.e., as an administratrix, *see, e.g., Young v. Pattridge*, 40 F.R.D. 376 (N.D.Miss.1966), trustee, *Brown v. Keller*, 274 F.2d 779 (6th Cir.), *cert. denied*, 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960), or the like. Although the instant pleading purports to raise substantive issues, i.e., whether the claims in suit are assignable, like more traditional "capacity" questions, defendant here claims it is being sued by the wrong person; that is, by a plaintiff who has no right to recover for the alleged wrong.

strate that it has a right to recover for the injury it alleges was suffered because of defendant's conduct, it has the burden of proof on the issue.[5] Under the pleading configuration noted above, it seems relatively clear that defendant's assertion that the claim is nonassignable falls within the parameters of Fed.R.Civ.P. 9(a), and not Fed.R.Civ.P. 8(c). As has been observed, "[a]lthough Rule 9(a) gives a denial of capacity some of the attributes of an affirmative defense, it should not be so classified, and the matter is not governed by Rule 8(c)." 5 Wright & Miller, *supra*, § 1294, at 394.

### B. *Violation of the Statute*

■ The seventh affirmative defense, on the other hand, appears to truly raise matters which constitute an affirmative defense. Therein defendant asserts that even if everything plaintiff alleges in its complaint is true, plaintiff may not prevail because under its authorizing statute, plaintiff could not rescue Continental Bank in the manner that it did. This defense raises entirely different questions from those tendered by the sixth affirmative defense. It does not suggest that there is some defect inherent in the relationship of plaintiff and its assignor, or plaintiff and defendant. Rather, it alleges that the law authorizing plaintiff to act at all has been violated, and in defendant's words, "the FDIC should be held accountable to the limitations in the FDIC Act." KMG Memorandum in Opposition to FDIC's Motion to Strike, p. 24. Put another way, the seventh affirmative defense does not raise FDIC's capacity to sue because of some defect in its status as a party, but seeks to deprive FDIC of the benefits it acquired in the reorganization of Continental Bank because of its alleged violation of its organic statute.

Because as a general matter a plaintiff does not have an affirmative duty to plead lawful conduct as a prerequisite to suit, it seems relatively clear that if defendant has standing, it bears the burden of pleading and of persuasion that plaintiff did not act lawfully. Under this analysis, allegations of unlawful conduct on the plaintiff's part, alleged to defeat the plaintiff's claim, constitute a true affirmative defense falling within the ambit of Fed.R.Civ.P. 8(c).

### II
### STANDARDS FOR MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to order stricken any insufficient defense. For reasons that are not apparent to this judge, motions which attack the legal sufficiency of an asserted defense are not viewed hospitably. It has been said that such motions are "viewed with disfavor," 5 Wright & Miller, *supra*, § 1380, at 783, and it has been held that the motion should be denied unless the "questions of law are clear and settled, and that under no circumstances could the defense prevail." *Green Mountain Power Corp. v. General Electric Corp.*, 496 F.Supp. 169, 171 (D.Vt.1980).[6] As a sensible matter, however, it appears appropriate that some mechanism exist for disposing of an insufficient defense. The federal rulemakers determined that a motion to strike was the appropriate vehicle. However rigorous the standard for disposition may be (see footnote 6), it is settled that the motion is restricted to legal questions, and may not be granted where resolution is dependent upon disputed questions of fact. Thus, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." 5 Wright & Miller, *supra*, § 1381, at 795.

5. The parties agree the plaintiff has the burden of pleading and proving the validity of the assignment. *See* 6 C.J.S. 780 Assignments §§ 120, 123, at 789–90, 798 (1975), 6 Am.Jur.2d Assignments § 136, at 317 (1963).

6. In quoting *Green Mountain,* I do not necessarily endorse its standard, but merely note it as an example of the general inhospitality of the

courts to a motion under Fed.R.Civ.P. 12(f). As I said above, the reason for hostility is not clear to me. The entire thrust of modern pretrial procedures is judicial management of the case, with at least one goal being the trial of only those matters properly requiring trial. A motion to strike seems a perfectly legitimate tool for the early elimination of specious defenses.

Plaintiff seeks to strike defendant's so-called affirmative defenses alleging that plaintiff is without "standing" to raise the issues asserted. It is clear that "[i]f plaintiff wishes to challenge the propriety of allegations of an affirmative defense, the proper procedure is by motion to strike." 5 Wright & Miller, *supra*, § 1278, at 351. Nonetheless, consistent with the general lack of sympathy with such motions, it is also said that the motion "should not be granted unless the defense is patently defective." *Id.*

Questions of standing are addressed to the allegations of the complaint, *see Public Agencies Opposed to Social Security Entrapment v. Heckler*, 613 F.Supp. 558, 566 (E.D.Cal.1985), *rev'd on other grounds*, — U.S. ——, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986), and thus purely legal questions. Accordingly, resolution of standing issues by way of a motion to strike seems reasonably appropriate. In that regard, however, we have been taught that "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).[7]

Before reaching the contentions of the parties relating to the question of standing, I must determine as a preliminary question which law governs disposition of this motion.

## III

### WHICH LAW GOVERNS

Although it is not completely clear, it may be that KMG is asserting that disposition of these motions is governed by state law. If so, they are in error. To the degree plaintiff's motion raises a true question of standing, as it does in relation to the seventh affirmative defense, federal law governs. As to the sixth affirmative de-

fense, although plaintiff casts it as a "standing" question, as I explain, it really raises questions of substantive law. Nonetheless, those questions are also governed by federal law.

### A. *Standing*

■ Plaintiff's motion in regard to the seventh affirmative defense raises a true question of standing. It asserts that even if plaintiff violated the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et seq., defendant is simply not a proper party to challenge that unlawful conduct, i.e., that defendant lacks standing.

The standing doctrines which limit the power of a party to litigate an issue in a federal district court implicate "two separate but closely related components, a constitutional component derived from Article III of the Constitution, and a prudential component based on notions of judicial restraint." *Sierra Club v. Watt*, 608 F.Supp. 305, 314 (E.D.Cal.1985). To the degree that a party must have standing by virtue of Article III, the federal character of the question is self-evident. Again, because the questions of prudence relate to the propriety of a federal court exercising the power the Constitution and Congress has accorded it, the questions are peculiarly federal in character.

### B. *Assignability of Claim*

■ The attack on the sixth affirmative defense raises a different set of questions. As the commentators have noted, standing questions "ha[ve] been very much tied to litigation asserting the illegality of governmental action" 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 340–41 (2d ed. 1984), the issue raised by the seventh affirmative defense. The sixth affirmative defense, however, in no way presents issues unique to the powers of the government. Rather, it suggests that as a matter of law certain kinds of choses in action, including those at bar, are not assignable. By virtue of its legal

---

**7.** *Warth* dealt with the question of the standing of a plaintiff to litigate an issue. KMG contends that questions of standing do not apply to de-

fendants. That contention is resolved in § V A, *infra*.

argument, defendant alleges that plaintiff is without the capacity to sue it because plaintiff is not the real party in interest. It has been observed that although questions of standing and the real party in interest are sometimes confused, they are in fact distinct questions. *Id.* at 341–45. Nonetheless, as I now explain a determination of the assignability of claims in the matter at bar must also be determined under federal law.

The statute creating the FDIC, by its terms, requires that suits in which the FDIC is a party "shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819 (see footnote 1). The courts have apparently relatively uniformly held that Congress meant what it said. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 456, 62 S.Ct. 676, 678, 86 L.Ed. 956 (1942); *FDIC v. Hudson,* 643 F.Supp. 496, 498 (D.Kan.1986); *FDIC v. Fielding,* 309 F.Supp. 1146, 1151 (D.Nev.1969), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621; *FDIC v. Rectenwall,* 97 F.Supp. 273, 274–75 (N.D.Ind.1951). *But cf. FDIC v. Barness,* 484 F.Supp. 1134. Given the statute and weight of authority, it seems clear that federal law must govern the issue of whether the claim may be assigned. Of course, recognizing that federal law must govern does not preclude the courts from borrowing state law as the rule of decision in appropriate cases. *See U.S. for the Use and Benefit of United Electric Corp. v. National Bonding & Accident Insurance Co.,* 711 F.2d 131, 133 n. 2 (9th Cir.1983) ("[F]or resolving a given issue, the court may look to state law 'as a matter of convenience and practicality.'" (citation omitted)). I next consider whether such a borrowing is appropriate here.

The Ninth Circuit has recently explained that in determining the question of whether to borrow state law as the rule of decision in cases in which federal law must govern "the predominant consideration must be Congressional intent." *Mardan Corp. v. C.G.C. Music Ltd.,* 804 F.2d 1454, 1458 (9th Cir.1986). Thus the court explained "[i]f Congress had explicitly direct-

ed federal judges either to develop federal standards or to adopt state law, then the issue would be settled." *Id., and see California ex rel. State Lands Commission v. United States,* 805 F.2d 857, 861 (9th Cir. 1986) (hereinafter cited as *"California State Lands Commission"*) (Congress' provision for application of federal law in the Submerged Lands Act precludes application of state law). In the absence of direction from Congress, the circuit court appears to recognize two means of resolving the question of whether state or federal law applies. In *Mardan* the court held that in the absence of congressional direction "a court must ... decide whether formulating a federal rule would be appropriate as a matter of judicial policy under the three part test established in [*United States v.*] *Kimbell Foods* [440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)]," *Mardan,* 804 F.2d at 1458. On the other hand, in *California State Lands Commission,* the court in dicta suggested that a balancing test premised on *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979), was the appropriate method of resolving such questions. *California v. State Lands Commission,* 805 F.2d at 861. It appears to this court that whichever test is applied federal law supplies the rule of decision in resolving the question of whether a particular claim may be assigned to the FDIC by an insured bank.

Neither party has directed this court to any specific expression of congressional intent on this issue, nor has this court's independent research discovered any "clear" expression of intent. Accordingly, I turn to the *Kimbell Foods* three-part test as articulated by the court of appeals:

> (1) whether the issue requires "a nationally uniform body of law"; (2) "whether application of state law would frustrate specific objectives of the federal programs"; and (3) whether "application of a federal rule would disrupt commercial relationships predicated on state law."

*Mardan,* 804 F.2d at 1458 (citations omitted).[8]

---

8. The court has also explained, however, that

"[i]f the federal courts determine that state law

What is in issue is the power of the FDIC to accept the assignment of choses in action not from the public at large, but from its insured banks. Put another way, the issues tendered present questions concerning the powers of the FDIC to fulfill its duty under the statute. As I have noted above, the weight of authority holds that such questions must be resolved by application of a national rule. *Cf. D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, and the cases collected at p. 265, *supra*. Application of state law is also contraindicated since it might frustrate the federal program by limiting assets the FDIC could acquire. Under such circumstances, state law would in effect limit the means of accomplishing the FDIC's mission of safeguarding "the hard earnings of individuals against the possibility that bank failures would deprive them of their savings." *FDIC v. Philadelphia Gear Corp.*, — U.S. —, —, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428, 435 (1986). Finally, the application of a federal rule would in no way "disrupt commercial relationships predicated on state law" in the instant case. In the matter at bar, the alleged relationship between the bank and defendant is victim and tortfeasor, and thus no commercial relationship predicated on state law is implicated at all. Even as to more generalized claims the focus is on the relationship between the FDIC and its insured banks, a relationship not predicated on state law commercial relationships. For all of the above reasons, I determine that under *Mardan*, federal common law governs the question of whether a tort claim may be assigned to the FDIC by an insured bank.[9]

Moreover, a balancing of the various state and federal interests under *Wilson* as suggested by *California State Lands Commission* would lead to the same result.

The issue of the relationship between the FDIC and its banks is simply not one in which state interests are prevalent. Broadly stated, the issue is one concerning the relationship between the FDIC and its insured banks—a relationship controlled by federal statute. More narrowly, the question is the right of the FDIC to receive certain assets of a failing bank in the course of a rescue. It may be true that the claim assigned is one derived from state law, but that is not the gravamen of the question. Rather, the question is whether the claim, whatever its derivation, may be assigned by an insured bank to the FDIC pursuant to reorganization of that bank. No state interest seems to be involved in resolution of such an interest.

I conclude that under either test, federal law not only governs, but provides the rule of decision as to the assignability of a claim between the FDIC and one of its insured banks.

## IV

### ASSIGNMENT OF THE CLAIM

■ I have noted above that the question of whether plaintiff is the real party in interest is not a true affirmative defense. As such, it appears to this court that defendant's allegation should be stricken as surplusage. Nonetheless, as also noted above, the pleading is not wholly superfluous since under Fed.R.Civ.P. 9(a), the defendant has a duty to plead its contention as a specific negative averment. It has been suggested that where defendant has pled as an affirmative defense matter that should be raised by denial, "there is no reason to penalize him either by granting a motion to strike, which will not promote the disposition of the case on the merits, or by shifting the burden of proof from plaintiff

should be incorporated as a general matter, this does not necessarily mean that each and every state rule must be adopted—federal courts should still reject specific state rules that are aberrant or hostile to federal interests." *Mardan*, 804 F.2d at 1458 (citations omitted).

9. Of course, to the degree that both plaintiff and defendant rely on the provisions of Fed.R.Civ.P.

17(a), federal law governs. The federal rules are purely procedural. 28 U.S.C. § 2072 (1982); *see Del Re v. Prudential Lines, Inc.*, 669 F.2d 93, 96 (2d Cir.), *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). As such, federal law governs. *See Hanna v. Plumer*, 380 U.S. 460, 470–73, 85 S.Ct. 1136, 1143–45, 14 L.Ed.2d 8.

to defendant." 5 Wright & Miller, *supra*, § 1278, at 352.

While I fully appreciate the commentators' practical approach to the problems discussed above, the instant case illustrates circumstances which may require a more stringent response. Of course, a defendant should not be punished for misconceiving a matter as an affirmative defense when it is one requiring only specific negative averment. Striking the defense and repleading may nonetheless be required to ensure an absence of confusion as to where the burden of proof lies. This is particularly so where the assertion purports to be one as to the real party in interest, but is undergirded by an issue of substantive law. The discussion below outlining the parties' argument may illustrate the problem.

Defendant asserts that plaintiff is not the real party in interest. Plaintiff parries by arguing that the sole purpose of the real party in interest rule is to insure that a defendant can only be held liable to the party who is entitled to recover. Plaintiff then points out that it has received an assignment from Continental, and for good measure, the bank has since suit ratified the assignment. Defendant's thrust is to argue that because actions for professional malpractice are non-assignable, the ratification is without substance. Plaintiff says defendant's touche is unjustified because all that the court may examine is whether or not there was compliance with the formal requisites of assignment. Sorting all this out is difficult, and the difficulty is compounded by the pleading posture.[10]

First, plaintiff seems completely justified in arguing that the real party in interest doctrine is a mere feint. "The modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party entitled to recovery, and to ensure generally that the judgment will have its proper effect as res judicata." Note of Advisory Committee of 1966 Amendment to Fed.R.Civ.P. 17, *cited*

in *U–Haul International, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1038 (9th Cir.1986). Moreover, "it has been held that even when the claim is not assigned until after the action has been instituted, the assignee is the real party in interest and can maintain the action." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1545, at 654 (1971). To the degree that defendant seeks to insure that the negative aspect of the real party in interest doctrine has been satisfied, both the initial assignment and the ratification clearly serve that purpose. *See Clarkson Co. Ltd. v. Rockwell International Corp.,* 441 F.Supp. 792, 797–98 (N.D.Cal.1977).

Having said as much, it is also true that in resolving real party in interest questions in an assignment context "the court must assure itself that a valid assignment has been made." 6 Wright & Miller, *supra,* § 1545, at 653. To this end, the question of whether the defendant should be permitted to amend his pleading to specifically allege the asserted defect in the assignment is tendered. Of course, amendment should be freely allowed unless such amendment is futile. Fed.R.Civ.P. 15(a); *see generally Universal Mortgage Co., Inc. v. Prudential Insurance Co.,* 799 F.2d 458, 459 (9th Cir.1986) ("Although leave to amend 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile. . . ."). The question of futility is one of substantive law, and given the court's holding in section III–B, *supra,* a matter of federal common law.

I have noted above that the federal courts have repeatedly held that assets of insured banks may be assigned to the FDIC pursuant to a rescue without reference to state law. Thus, it has specifically been held that "tort law claims are assignable, although state law would not allow it." *FDIC v. Hudson,* 643 F.Supp. at 498. The justification for this rule appears to rest on

---

**10.** The court's employment of fencing terms in the text to describe the parties' positions is deliberate. Serious accusations and denials of wrongdoing involving millions of dollars are at stake in this lawsuit, and the parties and the court are spending valuable time on the niceties of the real party in interest rule.

the broad powers of the FDIC to purchase assets of banks under certain circumstances. 12 U.S.C. § 1823(c)(1). It is said that the statute "contemplated the unrestricted transferability of every asset of an insured bank" and that the language of the statute "adequately expresses the Congressional intent to make assignable a chose in action." *FDIC v. Hudson,* 643 F.Supp. at 498, *citing FDIC v. Rectenwall,* 97 F.Supp. 273, 274 (N.D.Ind.1951). Indeed, these cases determine that state law is not applicable because they believe that the congressional purpose in creating the FDIC would be inhibited by application of state law strictures. Moreover, free assignability of assets from failing insured banks to the FDIC realistically addresses the frequent need of the FDIC to operate under emergency conditions in rescue situations. A need by the FDIC to determine assignability on an asset-by-asset basis would surely slow a rescue operation down, when dispatch was required. I conclude that under federal law an insured bank's choses in action whether for malpractice or fraud are assignable to the FDIC in conjunction with a reorganization of the bank. Given this conclusion, a motion to amend the answer to specifically aver the non-assignable character of the debt would be futile.

In sum, the motion to strike the sixth affirmative defense must be granted since it is not an affirmative defense, and is mere surplusage. Moreover, a motion to amend the answer to incorporate the defense must be denied as futile.

## V

### STANDING TO RAISE FDIC'S ALLEGED VIOLATION OF THE STATUTE

*A. Does The Doctrine of Standing Apply To Affirmative Defenses?*

■ As noted above, defendants assert that "plaintiff's permanent assistance program for Continental Bank was in excess of plaintiff's statutory authority." Plaintiff seeks to strike the affirmative defense, arguing that defendant is without standing to assert it. KMG's first line of defense is

that the doctrine of standing has no application to a defendant. It notes that the doctrine is derived from Article III's requirement of a case or controversy, and thus asserts that standing relates solely to lawsuits by plaintiffs and not defenses by defendants. It notes that the Seventh Circuit has so observed. *See Wynn v. Carey,* 599 F.2d 193, 196 (7th Cir.1979).

At first blush, defendant's argument has the appeal of common sense. Plaintiff, in order to sue defendants, must assert a present case and controversy between them. To then argue that the defendant lacks standing to assert a particular defense to that very suit appears counter-intuitive. Nonetheless, as I explain below, defendant's position does not lie.

While standing does derive from Article III's requirement of a case or controversy, the existence of a disagreement between the parties over the law does not necessarily provide the answer to the question of whether there is a case or controversy for Article III purposes. Nor does the fact that a party's position on the law is correct provide that party with standing. The requirement of standing " 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.' " *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982), *quoting Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Standing first questions the right of a party to obtain a judicial determination. "Essentially, [the standing doctrine tests] whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

It may well be that the party whose standing is questioned is "almost invariably the plaintiff." 13 Wright, Miller & Cooper, *supra,* § 3531, at 340. That is not because standing is inherently a question limited to plaintiffs, but rather a function of the way

lawsuits are ordinarily conducted. As noted above, standing generally arises in the context of purported illegal conduct by a governmental agency. Such questions are almost always posed by a plaintiff who seeks to either enjoin such conduct or obtain damages by virtue thereof; hence the question most often arises as one of plaintiff's standing to sue. Nonetheless, here defendant raises a true affirmative defense seeking to litigate questions not encompassed by plaintiff's case-in-chief. In such a configuration, defendant's posture is wholly analogous to that of a plaintiff in a typical standing dispute. There appears to be no reason in logic not to require a defendant who seeks to litigate the lawfulness of the government's conduct in such a context to demonstrate its right to obtain a judicial determination of its contention. Indeed, as the FDIC points out, in criminal cases where the government is the plaintiff, defendants must demonstrate standing to raise issues, even issues of constitutional dimension. *See Eisenstadt v. Baird,* 405 U.S. 438, 443–46, 92 S.Ct. 1029, 1033–34, 31 L.Ed.2d 349 (1972); *McGowan v. Maryland,* 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1106–07, 6 L.Ed.2d 393 (1961). Moreover, on the occasions where a civil defendant's standing is in issue, the court engages in standard standing analysis. *NAACP v. Alabama,* 357 U.S. 449, 458–60, 78 S.Ct. 1163, 1169–70, 2 L.Ed.2d 1488 (1958) (defendant in civil contempt); *Barrows v. Jackson,* 346 U.S. 249, 254–60, 73 S.Ct. 1031, 1033–37, 97 L.Ed. 1586 (1953) (defendant in contract action). I thus conclude that a plaintiff may raise the question of whether a defendant has standing to pursue a true affirmative defense.

## B. *KMG Lacks Standing*

Having determined above that a defendant must demonstrate standing to raise purported unlawful governmental conduct as an affirmative defense, I now examine whether KMG has standing. In this regard, it is necessary to focus on the issue tendered. Defendant asserts that the FDIC accomplished the rescue of Continental Bank by purchasing preferred stock of Continental-Illinois Corporation (the holding company), "which would then 'downstream' the funds to the bank by purchasing its shares." Memorandum, July 28, 1984 from the General Counsel of the Treasury to the Secretary of the Treasury, Exhibit to defendant's Points and Authorities in Opposition to Motion to Strike. Defendant argues that the statutory scheme requires direct infusion of funds into the bank. *See* 12 U.S.C. § 1823(c)(1).

To demonstrate Article III standing, KMG must demonstrate (1) that it has suffered some actual or threatened injury as a result of the putatively illegal conduct of the FDIC; (2) that the injury can fairly be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758 (1982). Standing implicates a second nonconstitutional prudential component derived from "notions of judicial restraint." [11]

Relative to the constitutional standards, KMG may be seen to be arguing one of two bases for standing. First, they appear to be simply claiming the right to require that the government obey the law. Second, they may be asserting that the bailout resulted in having to defend this lawsuit. Neither asserted basis suffices.

As to the first basis, the Supreme Court has "repeatedly held that an asserted right to have the government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright,* 468 U.S.

---

**11.** Because the prudential component is neither constitutionally nor statutorily derived, it must find its original in federal common law. The power of a federal court to decline to exercise jurisdiction over a case granted to it by Congress within its Article III power should pose a serious question. Indeed, we have been taught that federal courts have an "unflagging obligation" to exercise such jurisdiction. *Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir.1980), *quoting Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Nonetheless, to this court's knowledge, this arrogation of lawmaking power through the federal common law in the face of a specific statutory grant has never seriously been questioned.

737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). Thus to the degree KMG premises standing on that basis, this court is without Article III power to address its contention.

■ The second ground requires closer analysis. Defendant argues that but for the purported illegality of the rescue operation,[12] the assignment upon which this suit is predicated would not have occurred. Being a defendant in a lawsuit, it asserts, is injury within the meaning of *Valley Forge*. Since judgment in this suit would terminate its position as defendant, it argues that all three constitutional criteria have been satisfied.

We have been repeatedly cautioned that "[g]eneralizations about standing to sue are largely worthless as such." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). In like manner, we are taught that the relevant concepts are "not susceptible of precise definition," *Allen*, 468 U.S. at 751, 104 S.Ct. at 3325, and "cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." *Id.* Nonetheless, we are assured that this absence of certainty "hardly leaves courts at sea," *id.*, and that "[l]ike most legal notions, the standing concepts have found considerable definition from developing case law." *Id.* While the Supreme Court has eschewed mechanical application, it has observed that "[i]n many cases, the standing question can be answered by comparative allegations of the particular complaint to those made in prior standing cases." *Id.*

Whether an injury suffices for Article III purposes turns on whether an injury is "judicially cognizable." *Id.* at 752, 104 S.Ct. at 3325. Neither the parties nor the court have identified any case in which the purported injury is the need to defend a lawsuit as contrasted with extrajudicial detriment. Thus the court's first suggested method of resolving the question of KMG's

standing does not appear available and I am required to decide the question as one of first impression. This court is unwilling to hold that for Article III purposes the injury must always be extrajudicial. Nonetheless as I explain below, in the instant case the defendant's complaint, that it is forced to defend this litigation, is not fairly traceable to the alleged wrongful conduct within the meaning of the standing doctrine.

It is, of course, true that in a "but for" sense, KMG would not be defendant in the instant litigation if the bank had not been rescued; that, however, is not the issue. The question is whether, but for the infusion of capital in the holding company, as distinguished from the bank, KMG would be a defendant in the instant litigation. There is absolutely no reason to believe that if the course urged by KMG had been followed a different arrangement would have been made; on the contrary, it seems apparent that the exact same assignment would have resulted, and defendant would have been sued.

As FDIC notes, the assignment in issue was one of approximately 800 nonperforming loans assigned to it by Continental Bank in 1984 as part of the financial assistance program. KMG does not even hazard a plausible argument as to why the exact same assignments would not have been made if the capital were infused directly into the bank rather than the holding company. Moreover, as FDIC argues, if no financial assistance program had accrued, the bank was as free to sue as is the FDIC. Finally, if there had been no bailout and the bank had failed, the defendant would be in the same position. If the bank had closed, the FDIC would have been appointed receiver and would either sue Main Hurdman in that capacity or transfer the claims to the FDIC in its corporate capacity. *See* 12 U.S.C. §§ 1821(c), (d) and 1823(d). *See also* 12 U.S.C. § 1823(c) (FDIC may buy assets of failing banks).

---

**12.** For the purpose of resolving a standing challenge, the allegations being tested are accepted as true. *See* section II, *supra*.

Given all of the above, assuming without deciding that being a defendant in a lawsuit is the kind of palpable injury which suffices for Article III purposes, I find that defendant's claim is not traceable to the unlawful conduct complained of. Put another way, if the defendant is in the exact same condition it would have been without regard to the purported unlawful governmental conduct, it lacks standing to challenge that conduct.[13]

For all of the above reasons, the court determines that KMG is without standing to raise the purported illegality of FDIC's decision to infuse capital into Continental's holding company rather than the bank itself.

## CONCLUSION

For all the above reasons, defendant's sixth and seventh affirmative defenses are stricken without leave to amend.

IT IS SO ORDERED.

**13.** Given the court's resolution of Article III standing, I do not consider whether defendant has met the standards of prudential standing. I note in passing that the Supreme Court has very recently observed that in cases not arising under section 702 of the Administrative Procedure Act, prudential standing may not be satisfied by the "generous zone of interest" test, but may require a showing akin to an implied right of action. *See Clarke v. Securities Industry Association,* —— U.S. ——, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). Without engaging in an extended analysis, if such a standard indeed applies, it is extremely dubious, to say the least, that KMG's affirmative defense meets that standard.