**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Marvin D. NATHAN, et al., Defendants.**

**C.A. H–91–2845.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 1, 1992.

Steven L. Hoard, Stewart R. Werner, Mullin Hoard & Brown, Amarillo, Tex., Richard Gill, FDIC, Washington, D.C., for plaintiffs.

Robin C. Gibbs, Gibbs & Ratliff; Patricia L. Casey, Cordell & Casey; and Christian M. Sternat, Bakke Sternat & Gallman, Houston, Tex., for defendants.

Bernard Fischman, defendant pro se.

Lionel Schooler, defendant pro se.

## ORDER

HARMON, District Judge.

Pending before the Court in the above referenced action brought pursuant to 12 U.S.C. § 1819 and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, Aug. 9, 1989, are the following motions:

(1) From Defendant Lionel Schooler ("Schooler") a motion to dismiss (instrument # 14), supplement to motion to dismiss (# 30), and supplemental motion to dismiss (# 58);

(2) From Defendants Marvin D. Nathan, Herbert Lackshin, Ronald J. Sommers, Marc P. Walter, Jr., Ken-

neth Lupo, Lackshin & Nathan, Nathan Wood & Sommers, P.C. (all together referred to as "Attorney–Defendants"), a motion to dismiss (# 28), supplemental motion to dismiss (# 55), and another motion to dismiss for failure to state a claim (# 64);

(3) From Defendant Bernard Fischman ("Fischman") a motion to dismiss or for summary judgment (# 33), supplement to motion to dismiss or for summary judgment (# 48), and supplemental motion to dismiss (# 66); and

(4) From Plaintiff the Federal Deposit Insurance Corporation's ("FDIC's") motion to strike Fischman's affidavit in support of his motion for summary judgment (# 46).

FDIC sues two groups of people for legal malpractice and mismanagement and looting of Continental Savings Association ("Continental"), which was declared insolvent and went into receivership on September 26, 1988. Under theories of breach of fiduciary duty, legal malpractice, knowing participation in the breach of fiduciary duty, failure to supervise the lawyers involved, failure to advise the board of directors properly about a fidelity bond claim, violation of regulations, breach of contract, and breach of implied warranties, FDIC sues the law firm of Lackshin & Nathan ("L & N")[1], its partners, and its associates during the period of alleged misconduct, essentially early 1980's through the closing of the thrift: Marvin D. Nathan ("Nathan"), Herbert Lackshin, Bernard Fishchman, Ronald J. Sommers, Marc P. Gordon, Lionel Schooler, B.J. Walter, Jr. and Kenneth Lupo. L & N was Continental's general counsel and did most of its real estate and loan closing work. The second group, sued for breach of fiduciary duty, negligence, and waste of corporate assets, is comprised of owners and officers of Continental at the time: Carroll Kelly ("Kelly") and his nephew David Wylie ("Wylie") owned approximately 90% of Continental's common stock, while Kelly

---

**1.** In January 1990, Nathan, Sommers, Gordon, and Walter changed the firm's name to Nathan Wood & Sommers after Lackshin left. Subsequently the firm became a professional corporation.

served as chairman of the board and chief executive officer and Wylie as president. In addition Nathan was not only general counsel to Continental but also vice chairman of the board of directors from 1972 until the thrift was closed.

FDIC alleges that while on paper Continental appeared to be generating remarkable profits through what were actually unsound and illegal loans during the early to mid 1980's, the money disappeared into large salaries, bonuses, and substantial dividends to the self-interested, director-shareholders. Thus, claims FDIC, the thrift was operated primarily to enrich the shareholders. The officers covered up Continental's actual financial status by lending practices such as making new loans to fund delinquent interest payments on previous ones or creating a new loan in exchange for the purchase of inadequate collateral securing a problem loan, often later allowing the buyer to turn the collateral back to Continental without liability. Following an inflated dividend payment in January 1986, federal regulators halted further payments because Continental's regulatory capital was in a deficit situation by April of that year.

FDIC claims that the lawyer Defendants, with full awareness of the underlying fraud, provided legal representation, documentation, etc. in completing and executing specified unsound and illegal loan transactions in 1985–86, and that their misconduct constituted malpractice. The amended complaint pinpoints two lawsuits for usury and fraud against Continental that arose out of these loans: one filed in August 1986, which resulted in a judgment against Continental in June 1987, and another resulting in a $20,000,000.00 judgment against Continental in September 21, 1988, now on appeal. The complaint alleges that L & N continued to accept payment from Continental until it went into receivership.

■ In reviewing a motion to dismiss, the Court must take a plaintiff's allegations as true, view them in a light most favorable to the plaintiff, and draw all inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The motion must be denied unless the Court finds that beyond all doubt that the plaintiff cannot prove any facts to support its claims for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Because there are three[2] issues common to the various motions to dismiss, the Court addresses these first, in the following order: (1) The action against L & N and its attorneys is barred by Texas' two-year statute of limitations; (2) malpractice claims are not assignable; and (3) there is no proof that Defendants' actions proximately caused injury to the failed Continental.

■ Lawyer Defendants argue that the tortious legal malpractice claims are time-barred by Texas' two-year statute of limitations. *Willis v. Maverick,* 760 S.W.2d 642, 645–46 (Tex.1988); *Matter of Gleasman,* 933 F.2d 1277 (5th Cir.1991). However, the statute of limitations for legal malpractice and for breach of fiduciary duty sounding in tort does not begin to run until the claimant discovers, or should have discovered through reasonable care and diligence, the facts giving rise to his cause of action. *Id.,* 760 S.W.2d at 646; 933 F.2d at 1281–82. Defendants argue that the discovery rule does not apply here because the knowledge of the sham transactions and losses by their clients Wylie and Kelly, as president and chairman of the board, must be imputed to Continental. Moreover the majority of loans went directly into default and the impropriety of the transactions occurred immediately after they were completed, all prior to its declared insolvency. They contend that Continental had to have knowledge of the malpractice claims by August 26, 1986 at the latest, and therefore the claims were time-barred when the Federal Savings and Loan Insurance Corporation ("FSLIC") took over Continental on September 26, 1988. The Attorney Defendants further contend that knowledge of

**2.** Because FDIC has deleted its Deceptive Trade Practices Act claims in its amended complaint, the Court finds Defendants' challenges to them moot.

wrongdoing by one who substantially controls a corporation is imputed to the corporation regardless of his culpability as long as he is attempting to benefit the corporation. *FDIC v. Ernst & Young*, No. 3–90–0490–H, slip op., 1991 WL 197111 (N.D.Tex. Sept. 30, 1991), *aff'd*, 967 F.2d 166 (5th Cir.1992); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170, 190–91 (Tex.App.—Waco 1987, writ den'd n.r.e.).

FDIC responds that because Continental did not discover the facts giving rise to its claims until after it went into receivership, or, alternatively, because it discovered them within the two-year period before the thrift was closed, the Texas statute of limitations had not run when FSLIC was appointed receiver of Continental. Moreover the agency alleges Defendants fraudulently concealed and prevented discovery of underlying facts. Should the Court determine that Kelly and Wylie's knowledge of wrongdoing is imputed to the corporation, FDIC contends that the statute of limitations was tolled by the adverse domination doctrine and the continuing representation rule, discussed later. FDIC urges that the claims were not stale when FSLIC took over and that therefore 12 U.S.C. § 1821(d)(14)(A) & (B), as amended by FIRREA § 212(d)(14), applies here:

> Statute of limitations for actions brought by conservator or receiver
>
> (A) In general
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
>
>> (i) in the case of any contract claim, longer of—
>>
>>> (I) the 6–year period beginning on the date the claim accrues; or
>>>
>>> (II) the period applicable under State law; and

>> (ii) in the case of any tort claim, the longer of—
>>
>>> (I) the 3–year period beginning on the date the claim accrues; or
>>>
>>> (II) the period applicable under State law.
>
> (B) Determination of the date on which a claim accrues
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
>
>> (i) the date of the appointment of the Corporation as conservator or receiver; or
>>
>> (ii) the date on which the cause of action accrues.

Thus FDIC argues that the claims accrued when FSLIC as receiver took over the insolvent Continental on September 26, 1988 or later when it discovered the alleged wrongdoing.[3] Thus it filed suit timely on September 25, 1991, at least one day before the federal statute of limitations ran.

■ If the claims would be time barred at the time a corporation is acquired by a United States agency, the claims cannot be revived by that acquisition. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). However if, when federal agency acquires a claim from a private litigant, that claim is not already time-barred by the applicable state statute of limitations, the federal statute of limitations will preempt the state statute at that time. *FDIC v. Hinkson*, 848 F.2d 432, 434 (3d Cir.1988); *FDIC v. Howse*, 736 F.Supp. 1437, 1444 (S.D.Tex. 1990). Accordingly, a two-tier analysis is required: (1) whether the applicable state statute of limitations had expired before FSLIC took over Continental and acquired the state-law causes of action; and (2) if not, whether the applicable federal limitations period had run before the federal agency filed suit. *See Howse*, 736 F.Supp.

---

**3.** FSLIC later sold to FSLIC in its corporate capacity, among other things, all rights to claims against directors, officers and stockholders exercising a controlling influence over the management and policies of Continental and all rights to claims against professional persons, such as those against the lawyer Defendants

here. On August 9, 1989, the effective date of FIRREA, FSLIC was abolished, § 401(a)(1), and all assets were transferred to the FSLIC Resolution Fund to be managed by FDIC. FIRREA, § 215. FDIC corporate then became the successor to all actions by or for FSLIC under § 401(f)(2).

at 1440. The only issue here is the first test.

■ FDIC's original and amended complaints state that while the lawyers' alleged actions of malpractice were known to officers Kelly, Wylie, and Nathan, Continental only discovered the elements of its cause of action after, or at the earliest within two years of, the appointment of the receiver because only then did a disinterested party discover the facts. FDIC also contends that under the holdings of *FDIC v. Lott*, 460 F.2d 82, 87–88 (5th Cir.1972) and *American Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 271 (5th Cir.1981), the knowledge of a self-interested bank officer involved in fraudulent dealings cannot be imputed to the bank. Moreover, the agency correctly notes that the equitable imputed-knowledge rule applies only to innocent third parties, not culpable defendants acting in collusion with the wrongdoer to defraud. *Southern Farm Bureau Casualty Insurance Co. v. Allen*, 388 F.2d 126, 131 (5th Cir.1967); *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). It also points to a recent opinion from the Ninth Circuit, *FDIC v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992), which recognized that the thrift had a separate identity from its culpable officers and refused to impute their conduct and knowledge to FDIC. FDIC adds that there is also a distinct fact issue, inappropriate for resolution on a motion to dismiss, as to whether Continental's officers were working for or against the thrift; while the shareholders benefited, FDIC questions if the corporation did.

Citing *Lott*, 460 F.2d at 88 and quoting *Greenstein*, 744 S.W.2d at 190–91 (quoting (*Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982)), the Fifth Circuit recently set out a Texas test to determine under what circumstances knowledge of an employee should be attributed to a corporation:

In Texas, whether an employee's fraud is attributable to a corporation depends on whether the fraud was on behalf of a corporation or against it:

'Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are the beneficiaries of the fraud ... But the primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation, and the stockholders should not be allowed to escape all responsibility for such a fraud....'

*Ernst & Young*, 967 F.2d at 170–71.

By itself this *Greenstein* test would appear to bar FDIC's claim that Kelly and Wylie were working against the corporation. However, FDIC persuasively distinguishes the instant case from *Ernst & Young* on the facts. It emphasizes that the Fifth Circuit expressly limited its holding "to the facts of this case under Texas law—i.e., the FDIC, as assignee of a corporation [4] with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied." *Id.* at 172. In the instant case there are several shareholders and, the FDIC urges, it is suing not only as an assignee of the thrift but also on behalf of depositors, shareholders and creditors. Moreover the instant suit is not against an auditing firm, as in *Greenstein* and in *Ernst & Young*, but against attorneys with substantially different duties and obligations. Also, *Ernst & Young* was decided on summary judgment, and whether Kelly and Wylie were acting for or against

---

**4.** The appellate court emphasized, "The most significant factor in the present case's outcome is the FDIC's decision to sue only as Western's assignee. The FDIC did not sue on its own behalf or on Western's creditors' behalf. Essentially, therefore, this is a client case in which a client is suing its auditor. Consequently, the effect of the auditor's alleged negligence on third parties is legally irrelevant." 967 F.2d at 169.

the thrift is a factual issue. Furthermore the *Ernst & Young* district court, in finding that false financial statements did not proximately cause damages to the failed thrift, applied the imputed knowledge rule solely to eliminate the element of reliance, essential to finding injury, that formed part of the cause of action for negligent audit. Reliance is not an element to FDIC's legal malpractice claim.

This Court finds significant not only the different nature of Defendants' services here but also the FDIC's limited assignee status in *Ernst & Young* as compared with its broader standing in the instant suit. In *Ernst & Young*, the FDIC argued that had the audits been accurate, a third party would have been alerted and salvaged the thrift. The Circuit found no reliance on the audits by Western's owner, who, like his corporation by imputed knowledge, was aware of the precarious financial state of the thrift but ignored it. The Circuit explained that the saving-third-party argument could not be raised by FDIC because it could not be raised by the savings and loan to which the owner's knowledge was imputed. Had FDIC sued in its own capacity or on behalf of creditors,[5] it might have been appropriate. 967 F.2d at 171.

Thus this Court finds unsettled in Texas and in this Circuit whether, in a suit brought on behalf of innocent uninsured depositors and creditors, a dominating owner-officer works for or against his corporation when, with the aid of counsel of whose

wrongdoing the officer is fully aware, he enriches himself at the thrift's expense and demise. For purposes of a motion to dismiss, the Court is persuaded that here the alleged wrongdoing of Wylie and Kelly should not be imputed to the corporation, where they allegedly filled their own pockets while fraudulently extending the life of the thrift they continued to milk and intensifying the deficiencies which would push the institution into insolvency. *See O'Melveny & Meyers*, 969 F.2d 744, 750 (recognizing that the thrift had a separate identity from that of wrongdoer officers where there was fraud by insiders), cited with approval by *FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, No. 89-327 slip op. at 26–27 (M.D.La. July 13, 1992).

■ FDIC further argues that even if the Court finds the officers' knowledge of L & N's alleged malpractice is imputed to the corporation, limitations was tolled and the suit was timely filed. FDIC cites Texas and federal law which holds that while culpable individuals continue to have superior power over a corporation, limitations is tolled until a majority of disinterested directors discover or are put on notice of a cause of action. *Allen v. Wilkerson*, 396 S.W.2d 493, 500 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.); *IIT v. Cornfeld*, 619 F.2d 909 (2d Cir.1980). This principle, known as the "adverse domination" tolling rule, was adopted by a court in this district in *Howse*.[6] 736 F.Supp. at 1442 (Lake, J.).

---

**5.** According to 12 U.S.C. § 1821(d)(2)(A), FIRREA grants the receiver "all rights, titles, powers, and privileges of the insured depository institution, *and of any ... account holder [or] depositor ... with respect to the institution and the assets of the institution*" (emphasis added). FDIC in its corporate capacity therefore does not simply step into the shoes of the failed corporation and assert its claims, but also can pursue claims on behalf of depositors, shareholders, and creditors.

**6.** Defendants point to *FDIC v. Shrader & York*, 777 F.Supp. 533 (S.D.Tex.1991) (Black, J.), issued by a different judge in this district, ruling that the reverse domination doctrine does not apply to actions against third parties, here the law firm. FDIC contends that *Shrader* does not apply here, first, because it was decided on summary judgment after adequate time for dis-

covery. Second, the case does not make such a broad ruling on the doctrine of adverse domination. FDIC urges that the circumstances here justify application of the rule. Citing various authorities, FDIC notes that the reason for the doctrine is that blameworthy directors and officers could not be expected to cause their corporation to bring suit against someone if doing so would bring attention to their own misconduct. In the instant suit, Nathan, as a director and vice chairman of the board of Continental, could not be expected to ask the thrift to sue him and his law firm. Wylie and Kelly would not ask either because the request would highlight their own culpability. *Shrader* is now on appeal, and perhaps the issue will be settled shortly by the Fifth Circuit. *See also* a decision by the same judge, *Randolph v. First South Savings Assoc.*, H–89–1302 (S.D.Tex. Apr. 27, 1992).

*See also RTC v. Gardner,* 798 F.Supp. 790 (D.D.C.1992)[7]; *FSLIC v. Williams,* 599 F.Supp. 1184, 1194–95 (D.Md.1984) (cause of action accrues only when nonculpable individual with authority to sue discovers the cause of action).[8] There appears to be a clear trend toward adoption of the adverse domination doctrine in circumstances such as these where there was no disinterested majority of shareholders to receive notice or discover wrongdoing. *See, e.g., Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1522 (10th Cir.1990) (and cases cited therein); *Howse,* 736 F.Supp. 1437.

FDIC points out that the Texas Supreme Court has recognized that when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, limitations is tolled on the malpractice claim until the attorney-client relationship has been dissolved. *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156–57 (Tex. 1991); *see also McClung v. Johnson,* 620 S.W.2d 644 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) The "continuing relationship" thus tolls the malpractice action during counsel's defense of a claim resulting in litigation until the appeal process is complete. *Id.* As mentioned, FDIC alleges that at least two lawsuits, one still on appeal, from disgruntled borrowers under suspect loans were pending within the two-year period before FSLIC was appointed as receiver.

Because the Court concludes that the claims were not stale when FSLIC was appointed receiver, because even if they might be if the allegedly culpable wrongdoers' knowledge were imputed to the corporation, both the adverse domination doctrine and the continuing relationship rule (both factual issues here) in equity could apply to toll the two-year statute of limitations for mismanagement and legal malpractice, and because FDIC's allegations must be viewed as true and all inferences drawn in its favor for purposes of reviewing a motion to dismiss, the Court finds that the limitations argument fails.

■ Defendants' second common argument in their motions to dismiss is that in Texas malpractice actions are not assignable, there is no privity here, and FDIC was not a client of L & N. FDIC counters that federal law allows assignment of malpractice claims to it even where state law does not and cites persuasive authorities. *FDIC v. Main Hurdman,* 655 F.Supp. 259, 265–66 (E.D.Cal.1987); *FDIC v. Hudson,* 643 F.Supp. 496, 498 (D.Kan.1986) (and cases cited therein).

In *Main Hurdman,* an accountant malpractice suit holding that federal law governs and provides the rule of decision as to the assignability of a claim between FDIC and an insured bank, the court first applied a three-part test established in *United States v. Kimball Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), as articulated in *Mardan Corp. v. C.G.C. Music Ltd.,* 804 F.2d 1454, 1458 (9th Cir.1986): (1) In the absence of direction from Congress, does the question require a "nationally uniform body of law?"; (2) Would state law obstruct particular aims of federal programs?; and (3) would federal law disrupt commercial relationships based on state law? Finding authority on the side of federal law, the court concluded that a

7. *Gardner* notes that the wide application by federal courts of this equitable tolling doctrine persuaded the D.C. district court to adopt it. In addition to *Howse* and other district courts, *Gardner* cites the following circuit court adoptions: *California Union Ins. Co. v. American Diversified Savings Bank,* 948 F.2d 556, 565–66 (9th Cir.1991); *Farmers & Merchants Nat'l Bank v. Brian,* 902 F.2d 1520, 1522–23 (10th Cir.1990); *Bornstein v. Poulos,* 793 F.2d 444, 447–49 (1st Cir.1986); *IIT,* 619 F.2d at 931–32 (2d Cir.). 798 F.Supp at 794. The court noted that it was applied not just to cases in which defendants were officers and directors of the corporation, but also an attorney, accountant, stockbroker, and lower level employee.

8. Defendants point out that the district court in *Ernst & Young,* No. 3–90–0490–H, slip op at 11, 1991 WL 197111, granted the accounting firm summary judgment because it determined that allegedly false financial statements had not proximately caused damages to the failed savings and loan. They argue that the decision turned on imputation of the allegedly culpable executives' knowledge of the actual financial condition of the institution to the corporation. The imputed knowledge then defeated all claims of reliance and, in turn, a finding of proximate cause.

national rule was necessary for FDIC to fulfill its statutory duty, that state law might obstruct the federal plan by limiting what assets FDIC could acquire, and that federal law would not disrupt any commercial relationships. Next the court applied a test balancing state and federal interests under *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979), and *California ex rel. State Lands Commission v. United States*, 805 F.2d 857, 861 (9th Cir.1986) and came to the same conclusion by that route, i.e., that state interests do not prevail in this area. *Main Hurdman*, 655 F.Supp. at 265–66. Thus the court found that malpractice claims are assignable from the bank to FDIC, even where contrary to state law, because 12 U.S.C. § 1823(c)(1) "contemplates the unrestricted transferability of every asset of an insured bank" to realize Congress' purpose in creating FDIC. *Id.* at 267–68, quoting *Hudson*, 643 F.Supp. at 498 *See also NCNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1499–1501 (5th Cir. 1990) (and cases cited therein) (applying *Main Hurdman* analysis to conclude that FDIC is empowered to transfer fiduciary appointments held by an insolvent bank even though state law prohibits such transfers). The Court accordingly dismisses the second challenge.

■ As the third shared objection, Defendants argue that the FDIC has failed to identify any damages proximately caused by the alleged legal malpractice of L & N lawyers and breach of fiduciary duty by Nathan in his capacity as a director of Continental. They cite *Shrader & York* and its authority, *Huddleston v. Herman & MacLean*, 640 F.2d 534, 555 (5th Cir. 1981), *aff'd in part, rev'd on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (in proving fraudulent inducement to purchase securities, plaintiff must show not merely transactional losses, but a causal link between the fraudulent representation or omission and the reduced value of the purchased securities).

FDIC responds, and the Court agrees, that securities fraud, a statutory cause of action, involves different duties and differ-

ent policies than does common-law malpractice. Moreover damages for improper loans are determined by the loss borne by the institution because of the loan. *Payne v. Ostrus*, 50 F.2d 1039, 1041 (8th Cir.1931). As noted by FDIC, FSLIC cannot be blamed for failure to place the thrift into receivership earlier. *FDIC v. Mmahat*, 907 F.2d 546, 552 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991) (suit against general counsel of failed savings & loan). While FDIC will ultimately, after discovery, have to prove causation and damages, questions of fact, it does not have to do so in the context of a motion to dismiss. *See, e.g., Seafirst Corp. v. Jenkins*, 644 F.Supp. 1152, 1155 (W.D.Wash.1986). The complaint alleges that the attorney Defendants knowingly aided Kelly and Wylie in breaching their fiduciary duties by structuring, documenting, and closing fraudulent loans and failed to warn any nonculpable party of the illegal transactions. Here the transactions were allegedly so improper that it was foreseeable that the loans would not be repaid. The Court finds sufficient allegations of injury here to defeat a motion to dismiss.

■■ The Court turns to the individually raised challenges in the motions to dismiss. First Nathan argues that he cannot be liable for his actions as a personally interested director because they were ratified by the shareholders of at least ninety percent of Continental's shareholders, i.e., Kelly and Wylie. If a majority of the shareholders know of and approve any improper or *ultra vires* acts of the corporation's officers and directors, the corporation cannot later sue them for that conduct. Nathan cites as authority, *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510 (Tex. Civ.App.—Austin 1976, writ ref'd n.r.e.) (officer-director of a corporation, who was also its sole shareholder, ratified his own actions in taking corporate opportunity); *Rogers v. Butler*, 563 S.W.2d 840, 843 (Tex. Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

FDIC replies, and the Court concurs, that ratification, like the imputed knowledge

rule, is an equitable concept to protect innocent third parties and cannot be utilized by wrongdoers. *Evanston Bank v. Conticommodity Services, Inc.*, 623 F.Supp. 1014, 1034 (N.D.Ill.1985); *Lincoln Fire Ins. v. Taylor*, 81 S.W.2d 1059 (Tex.Civ. App.—Ft. Worth 1935, writ dism'd) ("Ratification can only be effective between the parties involved when the agent's act is done openly and admittedly for the principal and not when done for the agent's express benefit or for some third party."). Moreover a breach of fiduciary duty to the principal is "incapable of ratification." *Id.* at 1060. FDIC cites *Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F.Supp. 1302, 1305 (S.D.N.Y.1989) for the rule that if creditors or the public are injured, even unanimous shareholder ratification will not preclude suit. Furthermore, ratification is a fact issue not amenable to resolution in a motion to dismiss.

■■■ Defendant lawyers contend that FDIC fails to state a claim for breach of warranty because there is no express warranty alleged and because under Texas law implied warranties do not arise in the context of professional services. They cite as authority *Dennis v. Allison*, 698 S.W.2d 94, 96 (Tex.1985); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1378, 1379 (5th Cir.1987).

FDIC properly corrects Defendants' misreading of *Dennis*, in which the Texas Supreme Court chose not to impose as a matter of public policy an implied warranty, a strict liability concept, on a physician who sexually assaulted his patient because the patient had other adequate remedies under existing law. 698 S.W.2d at 96. Later cases indicate that the issue has not been resolved: *Melody Homes Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) ("whether an implied warranty applies to services in which the essence of the transaction is the exercise of professional judgment is not before us"); *Brooks*, 832 F.2d at 1379. FDIC points to *Cook v. Irion*, 409 S.W.2d 475 (Tex.Civ.App.—San Antonio 1966, no writ), still viable law, for its holding that a lawyer impliedly war-

rants to his client that he has the requisite learning, skill, and ability to practice his profession, that he will exert his best judgment on behalf of his client's action, and that he will exercise reasonable and ordinary care and diligence in his representation. Because the issue of an implied warranty in the rendition of legal services has not been finally determined, the Court concludes that the motion to dismiss must fail on this ground.

■■■ Defendants also challenge FDIC's claim of malpractice regarding the bond issued by Aetna Casualty and Surety Company to Continental to cover "dishonest or fraudulent acts committed by the Employee with manifest intent to cause the insured to sustain a loss." FDIC, they argue, has alleged that Kelly and Wylie tried to *hide* losses from regulators to maximize Continental's profits and to create large dividends for shareholders. They also state that FDIC did not allege that Kelly and Wylie intended to cause a loss to Continental.

FDIC claims that L & N had a duty to disclose to the nonculpable members of the board of directors, who should have notified the bond carrier; indeed Nathan should have notified the carrier. It responds, and the Court agrees, that it has stated a malpractice claim by alleging that Kelly and Wylie with the aid of their attorneys caused Continental to enter into bogus transactions and to suffer losses, and that their conduct was dishonest and covered by the bond.

Fischman challenges sufficiency of service of process on him. However, FDIC has shown that after Fischman challenged its first attempt, when the summons and complaint were left at his residence with a maid, FDIC timely served him by mail pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) and filed Fischman's acknowledgment of receipt of service with the Court.

■■■ Fischman further argues that the complaint fails to allege any claims against him because he personally did none of the transactional work in dispute. The Court finds this argument meritless as the complaint alleges that he is directly liable

because he failed to supervise attorneys in his firm and to deter negligent and unethical conduct, and that as a partner in L & N he is vicariously liable for the acts of the firm's partners and associates.

B.J. Walter argues that he was not a partner of L & N prior to January 26, 1986, when the alleged acts of malpractice took place, and is therefore not liable for the existing obligations of the firm. Since the complaint alleges that malpractice relating to Continental's fidelity bond may have occurred after Walter became a partner, this objection also fails.

Accordingly, the Court

ORDERS the following:

(1) Defendants' motions to dismiss and Fischman's motion for summary judgment (# 14, 30, 58, 28, 55, 64, 33, 48, and 66) are DENIED; and

(2) FDIC's motion to strike Fischman's affidavit in support of his motion for summary judgment (# 46) is MOOT.