William J. MASON, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First City, Texas—Houston, Defendant.

Civ. A. No. H–94–1008.

United States District Court,
S.D. Texas,
Houston Division.

March 30, 1995.

Donald Kirk Leufven, Alonso & Cersonsky, Bobby Nick Turner, Office of Harris Cty Atty., Houston, TX, for F.D.I.C.

Leonard H. Simon, Todd J. Zucker and Brian K. Hammer, Boyar Simon and Miller, Houston, TX, for William J. Mason.

Donald Kirk Leufven, Alonso & Cersonsky, Houston, TX, for First City, Texas—Houston N.A.

## ORDER

HARMON, District Judge.

Pending before the Court is United States Magistrate Judge Frances H. Stacy's Memorandum and Recommendation (Instrument #20) Granting in Part Defendant's Motion to Dismiss (Instrument # 3). Having reviewed the record and considered the memorandum, the Federal Deposit Insurance Corporation's objection, and the applicable law, the Court finds the recommendations to be proper in all respects. Accordingly, the Court

**ORDERS** that the Magistrate's Memorandum and Recommendation is **ADOPTED** in toto as the Order of this Court as if herein restated, and further

**ORDERS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's claim for violations of Texas' Deceptive Trade Practices Act and **DENIED** as to Plaintiff's claims for breach of warranty, tortious interference, and civil conspiracy.

1. Mark White is the former Governor of Texas.

2. At the time of the acquisition, Pyle Communications was in bankruptcy. Spindletop Savings Association, Pyle Communication's largest creditor, had agreed, prior to the sale, to sell Mason its claim against the bankruptcy estate at a $1,900,000 discount.

3. It is not clear from the pleadings why GRI obtained a letter of credit to secure the loans.

## MEMORANDUM AND RECOMMENDATION GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

STACY, United States Magistrate Judge.

Before the Magistrate upon referral from the District Judge is Defendant's Motion to Dismiss (Document No. 3) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After reviewing the motion, the responses and replies, the allegations set forth in Plaintiff's Original Complaint, and the applicable law, the Magistrate RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

### I. Background

On March 28, 1994, Plaintiff William J. Mason ("Mason") brought suit against the Federal Deposit Insurance Corporation as Receiver for First City, Texas ("FDIC") for breach of warranty, violations of Texas' Deceptive Trade Practices Act, tortious interference and conspiracy. According to Mason, First City, Texas—Houston, N.A. ("First City") wrongfully demanded payment under a letter of credit, causing Mason to lose his interest in Modern World Media, Inc. ("MWM").

On February 9, 1990, Mason and Mark White ("White") [1] purchased Pyle Communications for $3,600,000. This purchase was financed by a line of credit provided by First City in the amount of $2,100,000, a loan from First City to White in the amount of $400,000, and a $1,900,000 Spindletop Savings Association discount. [2] The $2,100,000 line of credit was secured by (1) the assets of Pyle Communications; (2) guarantees executed by Mason, White, and White's wife; and (3) a letter of credit obtained by Gnat, Robot, Inc. ("GRI") from NCNB. [3]

On August 9, 1990, Pyle Communications was acquired by MWM, a Texas corporation

The only indication in the pleadings regarding this situation is in Plaintiff's Original Complaint at 5:

At White's request, Ross Perot accommodated White by causing one of his companies Gnat Robot Corporation ("GRC") to procure issuance of a $2,500,000 credit, with NCNB as the issuer and First City as the beneficiary.

created and owned by Mason and White.[4] Pursuant to this acquisition, MWM assumed all obligations of Pyle Communications. Following MWM's acquisition of Pyle Communications, First City entered into an agreement to provide MWM with a $5,100,000 line of credit. This line of credit was secured by (1) the assets of MWM; (2) guarantees executed by Mason, White, White's wife, and White's Children's Trust; (3) a pledge of 100% of the MWM stock owned by Mason, White, and White's Children's Trust; and (4) a letter of credit obtained by GRI and issued by NCNB in the amount of $2,500,000.[5] In connection with the GRI letter of credit, GRI entered into a stock option agreement with Mason, White, White's wife, and White's Children's Trust. Under that agreement, in the event that First City drew against the GRI letter of credit, GRI would be entitled to all stock in MWM.[6]

Mason's role in MWM's acquisition of Pyle Communications is essential to an understanding of the arguments for dismissal. Mason acted as a 40% shareholder in MWM, as a guarantor of the First City loans, as a pledgor of MWM stock, and as a party to the stock option agreement with GRI. In an event of a default under the First City loans, Mason risked liability on the amounts due and owing on the notes by virtue of the guaranty agreement, risked the loss of his stock in MWM to First City by virtue of the pledge agreement, and risked the loss of his stock in MWM to GRI by virtue of the stock option agreement.

In March of 1991, GRI, sensing that MWM was experiencing financial difficulties, attempted to withdraw its letter of credit. On March 21, 1991, GRI gave First City notice of its intent to withdraw the letter of credit and demanded return of the letter of credit. In conjunction with this notice, GRI filed a lawsuit, seeking to enjoin First City from demanding payment under the letter of credit. *Gnat Robot Corp. v. Modern World Media, Inc. and First City, Texas—Houston, N.A.*, Cause No. 011776 ("GRI lawsuit").[7] On July 15, 1991, NCNB gave notice to First City that it would not renew the letter of credit beyond its expiration date of August 13, 1991. On July 17, 1991, upon that notice, First City presented the letter of credit to NCNB for payment, arguing that the non-renewal of the letter of credit constituted an event of default under the loan agreements. NCNB paid the letter of credit proceeds, $2,500,000, to First City upon presentment.

On September 3, 1991, the GRI lawsuit went to trial. Following a jury verdict, judgment was entered in favor of GRI in the amount of $2,500,000. The judgment held Mason, the Whites, MWM, and First City jointly and severally liable for the $2,500,000. The judgment also provided that GRI was to receive, pursuant to the stock option agreement, all MWM stock.

Prior to a final judgment being entered in the GRI lawsuit, MWM filed for bankruptcy. The decision to file for bankruptcy was made at an MWM board of directors meeting held on September 16, 1991. Mason did not attend that meeting and alleges that the Whites and First City conspired to prevent him from receiving notice of the meeting.

In the bankruptcy proceeding, MWM was acquired by WCM Media Texas, Inc. in ex-

---

4. It is not clear from the parties' allegations how much stock Mason and White owned in MWM. Mason contends that he and White each owned 40% of the stock of MWM and that White's Children's Trust owned 20%. Plaintiff's Original Complaint at 7. The FDIC, on the other hand, claims that Mason owned 20% of the stock of MWM, with White, White's wife, and White's Children's Trust owning the remaining stock. Defendant's Brief in Support of its Motion to Dismiss at 2.

5. *See supra* note 3.

6. Mason alleged in its Response to the FDIC's Reply: [A]s a necessary condition to Ross Perot's agreement to issue the letter of credit, Mason was required to sign a Stock Option Agreement whereby if the letter of credit was drawn down, Perot would acquire Mason's Modern World Media, Inc. ("MWM") stock. As a result, Mason was required to reimburse Perot for Perot's loss to the extent of the value of Mason's stock.

Plaintiff's Response to the FDIC's Reply at 3.

7. The 127th District Court of Harris County initially and temporarily enjoined First City from presenting the letter of credit for payment. In July of 1991, the Court of Appeals vacated that temporary injunction.

change for assuming MWM's liabilities of approximately $4,650,000. To further the acquisition, First City provided financing to WCM in the amount of $700,000. First City also waived its contested contingent and noncontingent claims against MWM totalling approximately $5,000,000 in exchange for a $650,000 unsecured claim against MWM, which could be redeemed by WCM for $1 if the $700,000 loan was repaid within 42 months.

In this action, Mason has brought suit against the FDIC as receiver for First City, arguing that acts by First City constitute breach of warranty, violations of Texas' Deceptive Trade Practices Act, tortious interference with a contract, and conspiracy. With regard to the breach of warranty claim, Mason alleges that First City drew upon the letter of credit before the $2,500,000 provided by the letter of credit was due. With regard to the DTPA claim, Mason alleges that First City's premature and wrongful presentment of the letter of credit constituted false, misleading and deceptive acts. With regard to the tortious interference claim, Mason alleges that First City's premature and wrongful presentment of the letter of credit resulted in interference with the stock option agreement entered into by GRI, Mason and the Whites. Finally, Mason contends that First City conspired with White to place MWM in bankruptcy and thereby deprive Mason of his stock in MWM.

## II. Arguments for Dismissal

On May 31, 1994, the FDIC filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The FDIC argues that dismissal is warranted because the claims Mason has brought are all claims belonging to MWM, not to Mason individually. Accordingly, the FDIC contends that Mason is without standing to maintain this action. In response to the Motion to Dismiss, Mason argues that each

of the claims he has brought may be maintained in his individual capacity because First City owed him a direct duty as a pledgor of stock, as a guarantor of the loans, and as a party to the stock option agreement.

## III. Standard of Dismissal under Rule 12(b)(6)

Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Such dismissals, however, are rare, *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986), and only granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the Court accepts as true all allegations contained in the plaintiff's complaint. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982); *Gargiul v. Tompkins*, 704 F.2d 661, 663 (2nd Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Id.* "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark*, 794 F.2d at 970.

## IV. Standing

In a case brought in federal court on state law claims, issues of standing are determined by reference to state law. *Federal Deposit Ins. Corp. v. Howse*, 802 F.Supp. 1554, 1561 (S.D.Tex.1992). State law, in this instance, is Texas law, under which "a corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990).[8]

---

**8.** The Texas Supreme Court in *Wingate* relied on the holding and analysis in *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 221 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943):

> Ordinarily, the cause of action for injury to the property of a corporation, or the impairment

or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely re-

While this is the general rule regarding corporate stockholder standing, an exception to the rule exists when the stockholder brings an action for "wrongs done to him individually." *Id.*

If the act complained of "creates not only a cause of action in favor of the corporation but also creates a cause of action in favor of the stockholder, *as an individual,* for violation of a duty owing directly to him, the stockholder may bring suit as an individual." *Empire Life Ins. Co. v. Valdak Corp.,* 468 F.2d 330, 335 (5th Cir.1972); *see also Federal Deposit Ins. Corp. v. Howse,* 802 F.Supp. 1554, 1561 (S.D.Tex.1992) ("[A] shareholder may still bring suit if a director violates a duty arising from a contract or representation owing directly to him."); *Schoellkopf v. Pledger,* 739 S.W.2d 914, 918 (Tex.App.—Dallas 1987), *rev'd on other grounds,* 762 S.W.2d 145 (Tex. 1988) ("[A] stockholder may sue for violation of his own individual rights regardless of whether the corporation also has a cause of action."); *Schautteet v. Chester State Bank,* 707 F.Supp. 885, 887 (E.D.Tex.1988) (A stockholder may bring a direct action if he can show that "(1) he is owed a direct duty as an individual, (2) the duty running to the individual shareholder has been violated, and (3) the violation proximately results in his damage.").

▪ In determining whether the cause of action belongs to the corporation or to the shareholder, courts look to the rights and obligations that exist between the parties. If a shareholder plaintiff can establish the defendant owed it a duty that was separate and apart from the duty it owed to the corporation, an individual action may be maintained. *See Schautteet v. Chester State Bank,* 707 F.Supp. 885, 888 (E.D.Tex.1988).

As each of Mason's claims involve different standing issues, each will be addressed separately below.

### A. Breach of Warranty Claim

▪ The FDIC first argues that dismissal of Mason's breach of warranty claim is appropriate because the only warranties that existed flowed between First City and MWM, the parties to the loan agreement, and between First City and GRI, the parties to the letter of credit. In response to that argument, Mason points to Section 5.111(a) of the Texas Business and Commerce Code, which he claims makes the presentment warranty he complains of enforceable by third parties. Section 5.111(a) provides:

> Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to *all interested parties* that the necessary conditions of the credit have been complied with.

TEX.BUS. & COM.CODE ANN. § 5.111(a) (Vernon 1994) (emphasis added). Mason contends that he is an "interested party" under Section 5.111(a) because he individually pledged his MWM stock to First City as security for the loan and because he risked his MWM stock pursuant to the stock option agreement. Mason cites *Empire Life Ins. Co. v. Valdak Corp.,* 468 F.2d 330, 335 (5th Cir. 1972) as supporting his argument that his pledgor status gives him independent standing to maintain this cause of action.

In *Empire,* a shareholder who had pledged his stock as security for a loan, sought to recover in his pledgor status for the diminution in the value of his stock. When the issue of standing was raised, the Fifth Circuit found that although the corporation had a right to complain about the decrease in the value of its stock, the pledgor also had such a right. *Id.*

Applying *Empire* and Section 5.111(a) of the Texas Business and Commerce Code to the facts of this case, the Magistrate finds that Mason, as pledgor of his MWM stock, and as a party to the stock option agreement, has independent standing to maintain this action for breach of warranty against FDIC. While in this case Mason is suing for the loss of his stock, as opposed to the diminution of stock value, as was the case in *Empire,* the

---

sult in the depreciation of the value of their stock.

*Wingate,* 795 S.W.2d at 719 (citing *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 221 (1942), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943)).

Fifth Circuit made it clear in *Empire* that certain rights and obligations exist between pledgors and pledgees of stock.

The FDIC does not dispute that certain rights and obligations existed between Mason and First City by virtue of the pledge agreement. The FDIC does dispute that section 5.111(a) gives Mason, as a pledgor or as a party to the stock option agreement, an independent cause of action. According to the FDIC, the only parties who may invoke section 5.111(a) are those who have made payment pursuant to a demand. The FDIC contends that because Mason made no payment to First City, he cannot be considered an interested party under section 5.111(a). Additionally, the FDIC contends that because there are no cases which hold that a pledgor of stock or a party to a stock option agreement can be an interested party under section 5.111(a), Mason has no standing to maintain a suit based on section 5.111(a).

The case law regarding the definition of interested parties under section 5.111(a) of the Texas Business and Commerce Code is sparse. There is no case specifically delineating who is and who is not an interested party under section 5.111(a). However, the cases do seem to indicate that parties, before bringing suit for breach of the presentment warranty, are required to make payment under a letter of credit or reimburse a party that has made such payment. *See Amwest Sur. Ins. Co. v. Republic Nat'l Bank,* 977 F.2d 122 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1582, 123 L.Ed.2d 149 (1993) ("The courts that have addressed the issue agree that, once an issuer pays a draft on a letter of credit, it becomes an 'interested party' able to avail itself of the beneficiary's warranty under Article 5."); *Pubali Bank v. City Nat. Bank,* 676 F.2d 1326, 1329 n. 5 (9th Cir.1982) (Stating that an interested party under section 5.111 includes those who have provided indemnity under a letter of credit).

There are no cases under section 5.111(a) which specifically involve pledgors of stock or parties subject to a stock option agreement like the one involved in this suit. The nonexistence of cases, however, does not mean that pledgors or parties to the type of stock option agreements at issue in this case have no standing to sue under section 5.111(a). The cases that have dealt with interested parties do not foreclose the possibility of pledgors or parties to a stock option agreement from maintaining an action under section 5.111(a).

Mason contends that he advanced value in connection with the letter of credit and therefore should be considered an interested party. The value Mason claims to have advanced was his pledge of his stock and his participation in the stock option agreement. Specifically, Mason alleges that he lost all his stock in MWM as a direct result of First City's breach of the presentment warranty. Because Mason has alleged that he advanced something of value in connection with the letter of credit and because there is no case law which forecloses Mason, as a pledgor of stock or a party subject to a stock option agreement of the type involved in this case, the Magistrate cannot find as a matter of law that Mason is not an interested party within the meaning of section 5.111(a). Thus, Mason's Complaint cannot be said to show a bar to relief on its face, and the FDIC's 12(b)(6) motion to dismiss this claim should be denied.

■ As an alternate basis for dismissal, the FDIC argues that Mason has failed to state a claim under section 5.111 because he has suffered no damage. According to the FDIC, Mason's stock "had no value, or its value was very nominal" at the time Mason lost that stock. FDIC's Reply to Plaintiff's Response to Motion to Dismiss at 6. In response to this argument for dismissal, Mason contends that he need not specifically plead damages.

■ Under the dismissal standard set forth above, dismissal is only proper if the allegations in the pleadings show a bar to relief. *Clark,* 794 F.2d at 970. Mason, in his Original Complaint, alleges to have suffered damages associated with his loss of MWM stock. Taking this allegation as true, the Magistrate cannot find that Plaintiff's claim is barred as a matter of law. The FDIC's contention that Mason's stock was without value presents a question of fact that may only be resolved by considering evidence. *See Federal Deposit Ins. Corp. v. Nathan,*

804 F.Supp. 888, 896 (S.D.Tex.1992) (causation and damages present issues of fact). Because Mason has properly alleged that First City's breach of the presentment warranty proximately resulted in damage to him, Mason's breach of warranty claim cannot be dismissed under Rule 12(b)(6).

## B. DTPA Claim

The FDIC next argues that Mason has no standing to maintain an action under Texas' Deceptive Trade Practices Act because Mason does not qualify as a consumer under that Act. Texas' Deceptive Trade Practices Act ("DTPA") makes it unlawful to (1) pass off goods or services as those of another; (2) cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) cause confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; and (4) represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not. TEX.BUS. & COM.CODE ANN. § 17.46(b)(1)–(4) (Vernon 1994). In order to recover for violations of the DTPA, a plaintiff must be a "consumer" of goods or services provided by the defendant [9] and the goods or services acquired must form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981); [10] *see also Dickson Distrib. Co. v. LeJune,* 662 S.W.2d 693 (Tex.App.—Houston [14th Dist.] 1983, no writ). According to the FDIC, because Mason received neither goods nor services from First City, Mason is not a consumer under the DTPA.

In response to this argument, Mason contends that regardless of whether he individually entered into the loan agreements with First City, he, as a shareholder of MWM, as a guarantor of the loan agreement, and as a pledgor of stock, can be considered a consumer. Mason cites to *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983) in support of his argument that he has standing as a consumer under the DTPA.

In *Flenniken,* the plaintiffs contracted with a builder to construct a residence on property they owned. The plaintiffs executed a note naming the builder as the payee. The builder, in order to finance the interim construction, assigned this note to Longview Bank and Trust. When the builder unexpectedly abandoned the project, the bank foreclosed. The plaintiffs brought suit against the bank for violations of the DTPA. In ruling on the plaintiffs' status as consumers under the DTPA the Texas Supreme Court stated:

> Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA. A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint.

*Flenniken,* 661 S.W.2d at 707. Based on this analysis, the Texas Supreme Court found that regardless of the financing scheme entered into by the plaintiffs, they were consumers within the meaning of the DTPA because they had sought to purchase a home. In reliance on *Flenniken,* Mason argues, in response to the Motion to Dismiss, that his

---

**9.** A "consumer" under the DTPA is defined as:

[A]n individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1994).

**10.** The Texas Supreme Court in *Cameron* explicitly set forth the requirements for bringing a suit under the DTPA:

One requirement is that the person must have sought or acquired goods or services by purchase or lease. Another requirement recognized by this Court is that the goods or services purchased or leased must form the basis of the complaint. If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress.

*Cameron,* 618 S.W.2d at 539 (citations omitted).

"purchase of two radio stations forms the basis of his DTPA complaints against the FDIC." Mason's Response to Defendant's Motion to Dismiss at 12.

A review of *Flenniken* in light of the allegations in the pleadings reveals that *Flenniken* is not applicable to the facts of this case. If Mason, as opposed to MWM, had purchased the radio stations, there would be no argument regarding Mason's status as a consumer. The facts as recited by Mason himself, however, reveal that MWM, not Mason, acquired the radio stations using financing provided by First City. Because MWM purchased the radio stations, MWM has consumer status under the DTPA. Mason, who has not alleged that he individually sought or purchased goods or services which form the basis of this action, cannot be a considered a consumer under the DTPA. Any action under the DTPA would belong to the corporation MWM, the actual purchaser of the radio stations, not to Mason. Because the allegations contained in the Original Complaint do not establish Mason's status as a consumer under the DTPA, this cause of action should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief may be granted.

## C. Tortious Interference Claim

██ The FDIC in its next argument contends that Mason's tortious interference claim should be dismissed because Mason cannot establish that he suffered any damage. According to the FDIC, Mason's stock was worthless at the time it was ordered to be turned over to GRI pursuant to the stock option agreement. In response to that argument, Mason contends that the allegations in his pleadings regarding damage are sufficient to withstand a Rule 12(b)(6) motion to dismiss.

██ In Texas, a claim for tortious interference with a contract is based on (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with that contract; (3) proof that the intentional act of interference was a proximate cause of the damage sustained; and (4) proof that actual damage or loss occurred. *Browning–Ferris, Inc. v. Reyna,*

865 S.W.2d 925 (Tex.1993); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931 (Tex. 1991). While proof of actual damage is required in order for a party to recover on a claim of tortious interference, allegations of damages are all that is required to withstand a Rule 12(b)(6) motion to dismiss. *Federal Deposit Ins. Corp. v. Nathan,* 804 F.Supp. 888, 896 (S.D.Tex.1992) (stating that proof of damages does not have to be made to defeat a motion to dismiss).

In his Original Complaint, Mason alleges that First City tortiously interfered with the stock option agreement he entered into with GRI by wrongfully demanding payment under GRI's letter of credit. This wrongful demand for payment, according to Mason, damaged Mason by causing him to lose all his stock in MWM pursuant to the terms of the stock option agreement. Given these allegations, which are taken as true for purposes of this Rule 12(b)(6) motion to dismiss, Mason has stated a cause of action for tortious interference. The FDIC's contention that Mason's stock was without value presents a question of fact that cannot be resolved on a motion to dismiss. *Id.* Because Mason has properly alleged that First City's actions resulted in interference with the stock option agreement he had with GRI and that such interference damaged him, the tortious interference claim is not subject to dismissal under Rule 12(b)(6).

## D. Conspiracy Claim

██ In its final argument for dismissal, the FDIC contends that Mason has no standing to maintain his claim for conspiracy. According to the FDIC, the allegations that First City conspired with White to prevent Mason from attending the board of directors meeting and conspired with White to place MWM in bankruptcy, do not support a cause of action belonging to Mason. The FDIC argues that such an action for conspiracy only belongs to the corporation MWM. In response to this standing argument, Mason contends that First City and White conspired to violate his rights as a director of MWM by preventing him from attending a board meeting, and First City and White violated his rights as a pledgor of stock by placing MWM

in bankruptcy and destroying the value of Mason's pledged stock.

 In Texas, "an actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *In re Thoma,* 873 S.W.2d 477, 490 (Tex.Rev.Trib.1994); *Massey v. Armco Steel Company,* 652 S.W.2d 932, 934 (Tex.1983). The essential elements of a civil conspiracy claim include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.*

A review of the allegations in the Original Complaint reveals that Mason has stated a cause of action for civil conspiracy. While Mason complains about the actions of White and First City in placing MWM in bankruptcy, Mason alleges that White and First City took these actions in an attempt to deprive him of his rights as a director of MWM and to deprive him of his stock in MWM. Because the allegations in support of his conspiracy claim involve "wrongs done to him individually," Mason's conspiracy claim cannot be dismissed under Rule 12(b)(6).

**V. Conclusion**

Based on the foregoing, the Magistrate RECOMMENDS that Defendant's Motion to Dismiss (Document No. 3) be GRANTED IN PART and DENIED IN PART. The Magistrate RECOMMENDS that dismissal be GRANTED on Plaintiff's claim for violations of Texas' Deceptive Trade Practices Act and DENIED on Plaintiff's claim for breach of warranty, tortious interference with a contract, and civil conspiracy.

 The Clerk shall file this instrument and mail a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80–5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ware v. King,* 694 F.2d 89 (5th Cir. 1982), *cert. denied,* 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (en banc). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208 and a copy must be delivered to the Chambers of Judge Harmon, Room 9015, and to the Chambers of Magistrate Judge Stacy, Room 9010, Federal Building, 515 Rusk, Houston, Texas 77002.